Christopher Rogers
20 Doe Court
Wedgefield, South Carolina 29168
Ph: (803) 883-8196
ascdmtl2023@gmail.com

RCV'D - USDC COLA SC
SEP 9 '24 AM 9.55

CHRISTOPHER ROGERS, IN PRO PER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA, SOUTH CAROLINA

| | |
|---|---|
| CHRISTOPHER ROGERS - VESSEL<br>c/o Christopher Rogers - Living Man<br><br>**Plaintiff(s)**,<br><br>**vs.**<br><br><br>SAFE Federal Credit Union<br>Its agents Its Attorney(s) of Record, *et al.*,<br><br>**Defendant(s)**. | Case No.: 3:24-cv-04897-MGL-SVH<br><br>**Original Complaint**<br><br><br>**REQUESTING HEARING IN EQUITY<br>RESERVE THE RIGHT TO AMEND**<br><br><u>**JURY TRIAL DEMAND**</u><br><br>Action Filed: |

## I. **INTRODUCTION**

**COMES NOW**, Christopher Rogers (hereinafter Plaintiff, and/or Rogers) proceeding in *propria persona*, and files his civil lawsuit aforementioned for the real property located at 20 Doe Court, Wedgefield, South Carolina 29168. Plaintiff is before this court without waiving any rights, defenses, statutorily or procedurally.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United

- 1 -

ORIGINAL COMPLAINT

1  States[1]. A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal
2  right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey,*
3  *Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right
4  secured by the Constitution or laws of the United States was violated, and (2) that the alleged
5  violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42,
6  48 (1988).

## II. **PRO SE STATUS**

8          Plaintiff Christopher Rogers is proceeding in propria persona, undertaking the challenge of
9  federal litigation without legal representation. The courts, particularly within the Fourth Circuit,
10 have recognized the need to interpret pro se pleadings liberally, ensuring that litigants without
11 counsel are not unduly disadvantaged. However, while the courts provide some leniency, Plaintiff
12 acknowledges the responsibility to adhere to federal rules and procedural standards.

13         The Fourth Circuit has emphasized that pro se litigants are entitled to have their pleadings
14 construed more leniently, as highlighted in *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).
15 This principle ensures that meritorious claims are not dismissed due to technical pleading errors.
16 Nonetheless, the court is not obligated to act as counsel for the pro se litigant, as reiterated in
17 *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), where the court clarified that it
18 need not "conjure up" claims not presented. This principle underscores the need for clarity and
19 substance in pro se filings, both of which are demonstrated in the detailed allegations and legal
20 claims presented in this complaint.

21         Furthermore, the court in *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) reaffirmed that a
22 document filed pro se is to be liberally construed, but it must still set forth sufficient factual matter
23 to state a claim.  In this case, Plaintiff has made every effort to provide a clear, well-documented
24 complaint that adheres to the necessary legal standards, supported by the applicable laws and
25 statutes. The factual allegations and legal claims that follow are based on substantial legal grounds,
26 and Plaintiff respectfully requests that the court considers the merits of this case in light of the
27 above principles.

28

---

[1] *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)

### III. **THE PARTIES**

This action concerns certain real property, of which, Plaintiff, Christopher Rogers, an individual residing in the State of South Carolina, County of  Sumter, and *inter alia,* is the purchaser of the real property, located at 20 Doe Court, Wedgefield, South Carolina 29168, and claims an equitable and beneficial right of title to the real property described herein at all times relevant from and after April 16, 2021.

Defendant SAFE (Shaw Air Force Employees) Federal Credit Union is a financial institution operating under federal law with its principal place of business in 160 W. Wesmark Blvd. Sumter, SC 29150.

### IV. **JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically TILA, RESPA, MLA, and federal mail fraud statutes.

In determining whether an action presents a federal question under § 1331, a court must first discern whether federal or state law creates the cause of action. Most of the cases brought under § 1331 federal question jurisdiction "are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 809, 106 S.Ct. at 3233. In cases where federal law creates the cause of action, the courts of the United States unquestionably have federal subject matter jurisdiction. *Id.*

Venue is proper in this District under 28 U.S.C. § 1391 because the property that is the subject of this action is situated in this District, and the Defendant conducts business in this District.

To state a claim under 42 U.S.C 1983 the Plaintiffs must allege facts establishing that a state actor had deprived them of a right, privilege or immunity secured by the United States Constitution or statute. *Eldredge v. Town of Falmouth*, 662 F. 3d 100, 104 (1st Cir 2011);*Tobin v Univ. of Maine Sys.*, 62 F. Supp 2d 162, 165 (D. Me 1999); 42 USC 1983.

The Plaintiffs' factual allegations here are both plausible and well documented and in this case, the Plaintiff's Complaint more than adequately alleges that the Defendant violated numerous federal laws governing Real Estate Mortgage.

ORIGINAL COMPLAINT

V. **RULE OF LAW**

Whereby this cause, being a complaint in exclusive equity jurisdiction, (as it directly involves the property/estate/securities of the plaintiffs), cites the rule of law as follows upon: "Equity having power and the court having jurisdiction, decrees can conform to the exigencies of the suits and award appropriate relief under the complainant's general prayer." *United States v. Cooper*, 217 F. 846, 847 (D. Mont. 1914).

It is well settled that, "[w]hile a court of equity, having once obtained jurisdiction of a cause, will retain it for all purposes and administer complete relief, yet in order to authorize relief which can be obtained in a suit at law, there must be some substantial ground of equitable jurisdiction both alleged and proven; otherwise a court of equity will not retain jurisdiction and grant a purely legal remedy". *Gentry-Futch Company v. Gentry*, 90 Fla. 595, 106 So. 473; *See also* 10 R. C. L. 370 to 372. "[W]here . . . the equitable jurisdiction of the court has properly been invoked . . . the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law." *Porter v. Warner Holding Co.*, 328 U.S. 395, 399, 66 S.Ct. 1086, 1090, 90 L.Ed. 1332 (1946).

"We are dealing here with the requirements of equity practice with a background of several hundred years of history. ...`An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' *Meredith v. Winter Haven*, 320 U.S. 228, 235 [ 64 S.Ct. 7, 88 L.Ed. 9]. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Hecht Co. v. Bowles*, 321 U.S. 321, 329-330, 64 S.Ct. 587, 591-592, 88 L.Ed. 754 (1944)[2].

---

[2] *See also Rackley v. Board of Trustees*, 310 F.2d 141 (4 Cir. 1962); *Smith v. Staso Milling Co.*, 18 F.2d 736, 738 (2 Cir. 1927); 7 Moore, Federal Practice 1686-87 (2 ed. 1955).

## VI. **BILL OF RIGHTS**

No person's (to include infants/minors) property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and , when taken, except for the use of the State, such compensation shall be first made, or secured by deposit of money.

## VII. **FACTUAL ALLEGATIONS**

On or about April 16, 2021, Plaintiff Christopher Rogers entered into a mortgage agreement with Defendant SAFE Federal Credit Union for the property located at 20 Doe Court, Wedgefield, South Carolina. The Plaintiff alleges that Defendant engaged in the following unlawful practices:

**1. Engagement in Predatory Lending Practices:**

- Defendant engaged in predatory lending by misrepresenting critical loan terms, by failing to disclose material information regarding the risks associated with the loan. These actions amount to fraud under common law and statutory provisions. The Fourth Circuit, in *Bastress v. Neighbors*, 15 F.3d 1047 (4th Cir. 1994), acknowledged that predatory lending practices can constitute actionable fraud when they involve material misrepresentations intended to deceive the borrower.

**2. Improper Securitization and Transfer of the Mortgage:**

- Defendant improperly securitized and transferred the mortgage without providing the necessary transparency, in violation of federal standards as set forth under the Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010). The failure to comply with the Uniform Commercial Code ("UCC") in endorsing and transferring the negotiable instrument (the mortgage note) is a significant breach. As highlighted in *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011), proper endorsement and transfer of mortgage notes are critical to maintaining enforceability, and any lapse can lead to a complete invalidation of the mortgage.

- UCC §§ 3-201 and 3-301 require proper endorsement and negotiation of negotiable instruments. The Defendant's failure to adhere to these standards raises serious questions about the legal standing to enforce the mortgage, as recognized in *Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011).

ORIGINAL COMPLAINT

**3. Failure to Acknowledge and Respond to Plaintiff's Correspondences:**

- Plaintiff issued several notices, including a Notice of Rescission dated October 16, 2023, a Notice of Opportunity to Cure on November 2, 2023, and a Final Notice on December 5, 2023. Defendant's failure to respond to these notices violates the Plaintiff's rights under TILA, specifically under 15 U.S.C. § 1635, which requires prompt acknowledgment and response to rescission notices. The Defendant's disregard for these correspondences is not only a statutory violation but also a breach of the duty of good faith and fair dealing, as established in *Pee Dee State Bank v. Prosser*, 295 S.C. 229, 367 S.E.2d 708 (1988).

- Exhibit A: Mortgage, more specifically the Deed of Trust
- Exhibit B: October 16 Notice of Rescission of Mortgage Contract (No reply)
- Exhibit C: October 30 SAFE FCU Additional Payment - Good Faith tender of payment
- Exhibit D: November 2 Notice of Opportunity to Cure (No reply)
- Exhibit E: November 5 Final Notice - Failure to Cure, Breach of Trust, etc. (No reply)
- Exhibit F: ~~December~~ November 7 SAFE FCU Reply to October 30 Letter (failed verify/validate criteria)

## VIII. <u>LEGAL CLAIMS</u>

### COUNT 1: <u>FRAUD IN THE CONCEALMENT</u>

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Defendant SAFE Federal Credit Union concealed material facts from Plaintiff, including the terms of securitization and the true nature of the loan agreement. This concealment was intentional and designed to induce Plaintiff into a mortgage agreement that was not in his best interest.

To state a claim for fraud in the concealment, the Plaintiff must allege:

1. A false representation or omission of a material fact;
2. Scienter (knowledge of the falsehood);
3. Intent to induce Plaintiff to act or refrain from acting;
4. Justifiable reliance by Plaintiff; and
5. Damages as a result of this reliance.

1    The Fourth Circuit, in *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784

2    (4th Cir. 1999), underscored the importance of particularity in pleading fraud under Rule 9(b) of the

3    Federal Rules of Civil Procedure. The court emphasized that plaintiffs must set forth the "who, what,

4    when, where, and how" of the alleged fraud, providing enough details to give defendants fair notice

5    of the claims against them. This principle is further supported by *McCauley v. Home Loan Inv.*

6    *Bank*, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013), where the court ruled that fraudulent concealment

7    claims must be stated with specificity to survive a motion to dismiss.

8    **COUNT 2: <u>VIOLATION OF THE UNIFORM COMMERCIAL CODE (UCC)</u>**

9    Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein. The

10    promissory note associated with the mortgage loan for the property located at 20 Doe Court,

11    Wedgefield, SC 29168, is a negotiable instrument governed by Article 3 of the Uniform

12    Commercial Code (UCC). The UCC governs the transfer and enforcement of negotiable instruments,

13    including promissory notes, under Article 3. For a mortgage note to be enforceable by a new party,

14    it must be properly endorsed and transferred according to the UCC's requirements. SAFE Federal

15    Credit Union failed to properly endorse the mortgage note before attempting to transfer it to another

16    party, leading to uncertainty about the true holder of the mortgage and the enforceability of the debt.

17    The failure to properly endorse the mortgage note and the potential improper transfer of the

18    note without legal authority under the UCC have caused Plaintiff substantial harm, including:

19
20    - Uncertainty about the true holder of the mortgage and the enforceability of the debt.

21    - Potential exposure to foreclosure or other legal actions by a party that may not have legal

22        standing to enforce the mortgage.

23    - Financial harm related to the possibility that the mortgage could be deemed invalid or

24        unenforceable due to the improper transfer and endorsement process.

25    Under UCC Article 3, an endorsement is required to transfer the note's enforceability to a

26    new party.

27    Without such endorsement, the transfer is invalid, and the current holder of the note does not

28    have the legal standing to enforce it. The failure to endorse the note before transfer raises serious

1   questions about the chain of title and the legality of the mortgage transfer, as the Guaranteed

2   REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2022-28 Trust ("REMIC Trust"),

3   where the loan was sold to, is not named in any manner on any of the public records related to the

4   mortgage. This failure violates Plaintiff's rights under the UCC and calls into question the legal

5   standing of the current noteholder to enforce the mortgage.

6   • UCC § 3-201 (Negotiation): This section requires that a negotiable instrument be endorsed and

7      delivered to be effectively negotiated. The Defendant's failure to properly endorse the mortgage

8      note could invalidate the transfer, as supported by *In re Walker*, 466 B.R. 271, 284 (Bankr. E.D.

9      Pa. 2012).

10  • UCC § 3-301 (Person Entitled to Enforce): This section outlines who is entitled to enforce a

11     negotiable instrument. The Defendant's failure to properly endorse and deliver the mortgage

12     note calls into question the legal standing of the current holder to enforce it, as recognized in

13     *Deutsche Bank Nat'l Trust Co. v. Mitchell*, 27 So. 3d 630, 635 (Fla. Dist. Ct. App. 2010).

14  •    UCC § 3-302 (Holder in Due Course): The failure to properly endorse and transfer the note,

15     or the presence of defects, could disqualify the current holder from being considered a holder in

16     due course under UCC § 3-302[3]. In pertinent part, *In re Walker*, 466 B.R. 271 (Bankr. E.D. Pa.

17     2012) provides that for a party to be considered a holder in due course, the note must be

18     properly endorsed and transferred without defects. Any issues in the chain of title or failure to

19     meet the criteria set forth in UCC § 3-302 can prevent the party from attaining holder in due

20     course status, which is crucial for enforcing the instrument free from defenses[4].

21  • UCC § 3-407 (Alteration of Negotiable Instrument): Any unauthorized alteration of a

22     negotiable instrument, such as a mortgage note, can render the instrument void and

23     unenforceable. In this case, the Plaintiff alleges that the Defendant either directly or indirectly

24     caused unauthorized alterations to the mortgage note. These unauthorized changes directly

25     impact the enforceability of the note.

26

27  [3] *See HSBC Bank USA, N.A. v. Gouda*, 202 N.J. 251, 997 A.2d 1082 (2010);

28  [4] *See also Deutsche Bank Nat'l Trust Co. v. Mitchell*, 27 So. 3d 630 (Fla. Dist. Ct. App. 2010)

The alterations were made without Plaintiff's consent, thereby affecting the enforceability of the instrument. The impact of such unauthorized changes is significant, as recognized in *In re Kemp*, 440 B.R. 624 (Bankr. D.N.J. 2010), where the court held that alterations made without the obligor's consent can invalidate the note. Similarly, in *Bank of New York v. Yacoob*, 29 A.D.3d 547, 817 N.Y.S.2d 575 (2006), the court determined that unauthorized changes to a mortgage note could void the instrument, releasing the obligor from liability. The Defendant's actions, therefore, constitute a violation of UCC § 3-407, and the Plaintiff seeks appropriate relief from the court.

• UCC § 3-308 (Proof of Signatures and Holder Status): The burden of proving the validity of signatures and holder status lies with the party seeking to enforce the note. Given the issues raised in this case, the proof may not be sufficient under *In re Kemp*, 440 B.R. 624, 632 (Bankr. D.N.J. 2010).

## COUNT 3: <u>VIOLATION OF SOUTH CAROLINA MORTGAGE LENDING ACT AND CONSUMER PROTECTION CODE</u>

Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein. Defendant's failure to properly record the transfer and assignment of the mortgage note violates the South Carolina Mortgage Lending Act ("SCMLA"), which requires accurate recording of such transactions. The Defendant's actions also violated the South Carolina Consumer Protection Code ("SCCPC"), which prohibits lenders from engaging in unconscionable conduct, including charging exorbitant interest rates or otherwise acting in a grossly unfair manner.

Endorsement is mechanically necessary to constitute transfer interest to party not originally named. Entitlement to enforce a note focuses on the relationship between the maker of the note and the person enforcing it. Ownership of the note is a concept that deals with who is entitled to the economic fruits of the note.

Paragraph 1 of Plaintiffs Note state:

"I understand that the Lender may transfer *this Note. The Lender or Anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Noteholder."*

---

The Sumter County Record shows that no Assignments of Mortgage have been filed into the public records. This failure has caused harm to the Plaintiff by creating uncertainty about the true holder of the note and potentially impacting the Plaintiff's ability to resolve issues related to the mortgage.

The South Carolina Consumer Protection Code ("SCCPC") prohibits lenders from engaging in unconscionable conduct, which includes taking advantage of a borrower's lack of knowledge, charging exorbitant interest rates, or otherwise acting in a way that is grossly unfair[5]. SAFE Federal Credit Union engaged in predatory lending practices, which could include misrepresentation of loan terms and failure to disclose critical information, in violation of SCMLA. There were failures in properly disclosing material facts about the loan, particularly regarding the transfer and securitization of the mortgage note, which affected the Plaintiff's understanding and decision-making.

SAFE Federal Credit Union potentially operated without adhering to fair lending practices, including the proper and accurate recording of the mortgage loan's chain of title, which could impact the validity of the mortgage. As a result of these violations of the SCMLA, Plaintiff has suffered financial harm, including but not limited to the increased costs of the mortgage, the potential invalidation of the mortgage note, and significant emotional distress.

The South Carolina Consumer Protection Code (SCCPC) is designed to protect consumers from unfair, deceptive, and abusive practices by requiring lenders to provide clear disclosures, limit excessive fees, and prohibit unconscionable conduct in lending. SAFE Federal Credit Union failed to provide the required disclosures under the SCCPC, particularly related to the accurate recording and transfer of the mortgage note. The lack of proper endorsements and transparency in the loan's securitization process indicates a failure to comply with disclosure requirements. The conduct of SAFE Federal Credit Union in handling the loan's transfer and securitization has been unconscionable, as it has taken advantage of the Plaintiff's lack of knowledge or understanding of complex mortgage transactions.

---

[5] SCCPC § 37-5-108: Unconscionability

ORIGINAL COMPLAINT

- SCMLA: The failure to record the transfer of the mortgage note creates uncertainty about the true holder of the note and potentially invalidates the mortgage. As noted in *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011), failure to properly record assignments can lead to significant legal and financial consequences for lenders.

- SCCPC: Under SCCPC § 37-5-108, unconscionability in lending practices, including failure to disclose material facts about a loan, can render the contract voidable. The South Carolina Supreme Court in *Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 498 S.E.2d 898 (1998), held that a lender's failure to disclose key loan terms and practices that take advantage of borrowers can constitute unconscionable conduct.

- SCCPC: Under SCCPC § 37-10-102, there are restrictions on certain mortgage practices. An improper assignment that leads to misleading or deceptive practices regarding the enforcement of the mortgage note could violate § 37-10-102, particularly if it affects the borrower's rights or obligations under the loan.

- SCCPC: Under SCCPC § 37-10-107, there is a right to rescind. If the improper assignment interferes with the borrower's right to rescind or creates confusion about their rights under the loan, it could be a violation of this section.

## COUNT 4: <u>BREACH OF CONTRACT UNDER COMMON LAW</u>

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. A valid and enforceable contract existed between the Plaintiff and the Defendant regarding the mortgage agreement for the property located at 20 Doe Court, Wedgefield, South Carolina. The Plaintiff fulfilled all obligations under this contract by making timely mortgage payments and complying with the terms of the mortgage agreement. However, the Defendant materially breached this contract by:

1. Failing to provide accurate and complete disclosures as required under federal and state law;

2. Engaging in improper securitization practices that were not disclosed to the Plaintiff;

3. Altering the mortgage note without the Plaintiff's consent.

Under South Carolina law, a breach of contract occurs when one party fails to perform any term of a contract without a legitimate legal excuse. *In Tomlinson v. Mixon*, 367 S.C. 467, 626 S.E.2d 43 (2006), the South Carolina Supreme Court held that the non-breaching party is entitled to damages that naturally result from the breach, including compensatory and punitive damages where appropriate. The Defendant's actions have caused substantial financial harm and emotional distress to the Plaintiff, warranting relief from this Court.

### COUNT 5: <u>UNJUST ENRICHMENT UNDER SOUTH CAROLINA LAW</u>

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. The Defendant has been unjustly enriched at the expense of the Plaintiff. Through its actions, including the failure to disclose material facts, the improper securitization of the mortgage, and the collection of payments under false pretenses, the Defendant has retained benefits that, in equity and good conscience, should be returned to the Plaintiff.

Under South Carolina law, unjust enrichment occurs when one party is enriched at the expense of another under circumstances that the law sees as unjust. In *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 532 S.E.2d 868 (2000), the court recognized that unjust enrichment is an equitable doctrine requiring restitution to the party who has conferred a benefit that has been wrongfully retained. The Plaintiff seeks restitution of all payments made under the mortgage agreement, as well as any additional equitable relief that this Court deems just and proper.

### COUNT 6: <u>VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)</u>

### <u>15 U.S.C. § 1692 et seq</u>

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. The Defendant, in attempting to collect on the mortgage note, engaged in practices that violated the Fair Debt Collection Practices Act (FDCPA). Specifically, the Defendant:

1. Used false, deceptive, or misleading representations in connection with the collection of the debt, in violation of 15 U.S.C. § 1692e;

2. Engaged in unfair practices by attempting to collect amounts not authorized by the mortgage agreement or law, in violation of 15 U.S.C. § 1692f;

1    3.  Failed to validate the debt after receiving Plaintiff's dispute, as required by 15 U.S.C. §

2    1692g.

3    The FDCPA is designed to protect consumers from abusive debt collection practices, and

4    the Defendant's actions fall squarely within the conduct that the statute seeks to prohibit. The

5    Fourth Circuit in *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385 (4th Cir. 2014),

6    confirmed that violations of the FDCPA can lead to statutory damages, actual damages, and the

7    awarding of attorney's fees. Plaintiff seeks all relief available under the FDCPA, including statutory

8    damages, compensatory damages, and attorney's fees.

9    **COUNT 7: <u>NEGLIGENT MISREPRESENTATION UNDER SOUTH CAROLINA LAW</u>**

10    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

11    set forth herein. The Defendant, through its agents and employees, made false representations to the

12    Plaintiff regarding the terms of the mortgage loan, the interest rate, and the securitization of the

13    mortgage note. These representations were made negligently, without proper knowledge of their

14    truth, and with the intent that the Plaintiff would rely on them in entering into and continuing with

15    the mortgage agreement.

16    Under South Carolina law, a claim for negligent misrepresentation requires the Plaintiff to

17    show that: (1) the Defendant made a false representation, (2) the Defendant had a pecuniary interest

18    in making the statement, (3) the Defendant owed a duty of care to the Plaintiff to ensure the

19    accuracy of the statement, (4) the Defendant breached that duty by failing to exercise due care, (5)

20    the Plaintiff justifiably relied on the representation, and (6) the Plaintiff suffered a pecuniary loss as

21    a result. In *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 581 S.E.2d 161 (2003), the South

22    Carolina Supreme Court recognized negligent misrepresentation as a valid claim where reliance on

23    the defendant's misrepresentation led to financial harm. Plaintiff seeks compensatory damages for

24    the financial losses suffered due to Defendant's negligent misrepresentations.

25    **COUNT 8: <u>BREACH OF FIDUCIARY DUTY UNDER SOUTH CAROLINA LAW</u>**

26    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

27    set forth herein. A fiduciary relationship existed between the Plaintiff and the Defendant by virtue

28

of the trust and confidence Plaintiff placed in the Defendant's expertise and advice regarding the mortgage loan. The Defendant breached this fiduciary duty by:

      1. Failing to act in the Plaintiff's best interests;

      2. Misleading the Plaintiff about the terms and securitization of the mortgage;

      3. Concealing material information that would have influenced Plaintiff's decisions.

Under South Carolina law, a fiduciary duty arises when one party has a special confidence in another, resulting in a position of superiority and influence. In *Moore v. Moore,* 360 S.C. 241, 599 S.E.2d 467 (Ct. App. 2004), the court held that a breach of fiduciary duty occurs when the party in the position of trust fails to act in the best interests of the other party. The Plaintiff seeks compensatory damages, punitive damages, and any other relief this Court deems just and proper for the breach of fiduciary duty by the Defendant.

**COUNT 9: <u>VIOLATION OF THE DODD-FRANK ACT - UNFAIR, DECEPTIVE, OR ABUSIVE ACTS OR PRACTICES (UDAAP)</u>**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. The Dodd-Frank Wall Street Reform and Consumer Protection Act, enacted in 2010, was designed to promote financial stability, improve accountability, and protect consumers from abusive financial practices. One of the central provisions of the Dodd-Frank Act is the prohibition of Unfair, Deceptive, or Abusive Acts or Practices (UDAAP) by financial institutions, as codified under 12 U.S.C. § 5531.

The Plaintiff alleges that the Defendant, SAFE Federal Credit Union, engaged in practices that violate the Dodd-Frank Act's UDAAP provisions. Specifically:

**1.** Deceptive Practices: The Defendant failed to clearly and accurately disclose the terms of the mortgage loan, including the securitization process and the true risks associated with the mortgage. These omissions and misrepresentations were material and misleading, as they significantly influenced the Plaintiff's decision to enter into the mortgage agreement. The Fourth Circuit has recognized that deceptive practices, particularly in mortgage lending, can constitute a violation of consumer protection laws, as seen in *In re First Alliance Mortgage*

*Co.*, 471 F.3d 977 (9th Cir. 2006), where the court upheld claims of deceptive practices related to mortgage terms and conditions.

**2.** Unfair Practices: The Defendant engaged in unfair practices by altering the terms of the mortgage note without proper authorization and failing to properly endorse and transfer the note as required under the Uniform Commercial Code. This lack of transparency and failure to follow legal procedures placed the Plaintiff at a significant disadvantage, stripping him of his ability to understand and negotiate the terms of his mortgage. The court in *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972), defined unfair practices as those that cause substantial injury to consumers, are not reasonably avoidable, and are not outweighed by countervailing benefits to consumers or competition, a standard that the Defendant's actions meet.

**3.** Abusive Practices: The Defendant's conduct also constitutes abusive practices under the Dodd-Frank Act. The term "abusive" refers to practices that materially interfere with the ability of consumers to understand the terms of a product or service or take unreasonable advantage of the consumer's lack of understanding, inability to protect their interests, or reasonable reliance on the lender. The Defendant's failure to respond to Plaintiff's numerous correspondences, including notices of rescission and opportunities to cure, demonstrates a clear pattern of taking advantage of Plaintiff's lack of legal sophistication. As illustrated in *CFPB v. NDG Financial Corp.*, 15-CV-5211 (LGS), 2016 WL 7188792 (S.D.N.Y. 2016), such conduct can be classified as abusive under the Dodd-Frank Act, leading to significant legal repercussions.

Given these violations, Plaintiff is entitled to relief under the Dodd-Frank Act, including damages, restitution, and any other equitable relief deemed appropriate by this Court. The Defendant's actions have not only violated federal law but have also caused significant financial harm and emotional distress to the Plaintiff, who was deceived into entering a mortgage agreement under false pretenses and without a clear understanding of the terms.

**COUNT 10: <u>VIOLATION OF 18 U.S.C. § 1341 – MAIL FRAUD</u>**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Under 18 U.S.C. § 1341, Mail Fraud occurs when an individual uses the United States Postal Service or any private or commercial interstate carrier to execute or attempt to execute a scheme to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

The Plaintiff alleges that the Defendant, SAFE Federal Credit Union, engaged in Mail Fraud by utilizing the mail system to further their fraudulent scheme related to the Plaintiff's mortgage. Specifically:

**1.** Mailing of Deceptive Documents: The Defendant sent various documents, including the copies of the original mortgage note, monthly statements, and other correspondence, which contained false and misleading information about the terms and conditions of the mortgage. These documents were intended to deceive the Plaintiff into believing that the mortgage was properly originated, endorsed, and securitized, when in fact, significant alterations and omissions were made without the Plaintiff's knowledge or consent. The use of the mail to deliver these deceptive documents directly violates 18 U.S.C. § 1341.

**2.** Fraudulent Communications: The Defendant also sent misleading communications by mail regarding the status of the mortgage, the securitization process, and the Plaintiff's obligations under the loan. These communications were part of a broader scheme to defraud the Plaintiff by concealing the true nature of the mortgage agreement and the unlawful alterations made to the mortgage note. The court in *United States v. Schmuck*, 489 U.S. 705 (1989), affirmed that even routine mailings, if they are part of an overall fraudulent scheme, can constitute Mail Fraud.

**3.** Failure to Disclose Material Information: The Defendant's failure to disclose critical information regarding the mortgage's securitization and the unauthorized alterations made to the mortgage note was further compounded by their use of the mail to communicate with the Plaintiff. These omissions were designed to mislead the Plaintiff and prevent him from taking legal action or seeking remedies to which he was entitled. As illustrated in United

1 | *States v. Maze*, 414 U.S. 395 (1974), using the mail to perpetuate or further a fraudulent

2 | scheme, even indirectly, is sufficient to establish a claim of Mail Fraud.

3 | The Plaintiff contends that the Defendant's use of the mail in connection with their

4 | fraudulent activities was a deliberate and integral part of their scheme to defraud, and as

5 | such, constitutes a violation of 18 U.S.C. § 1341. The Plaintiff seeks all available remedies

6 | under federal law, including compensatory and punitive damages, for the harm caused by

7 | the Defendant's fraudulent actions.

8 | **COUNT 11: <u>VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT</u>**

9 | **<u>(RESPA), 12 U.S.C.§ 2605</u>**

10 | Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

11 | set forth herein. The Real Estate Settlement Procedures Act (RESPA) requires mortgage lenders,

12 | servicers, and brokers to provide borrowers with disclosures regarding the nature and costs of the

13 | real estate settlement process. It also imposes certain obligations on servicers to respond to

14 | borrower inquiries, properly handle escrow accounts, and refrain from kickbacks and referral fees.

15 | The Defendant violated RESPA in the following ways:

16 | 1. **Failure to Respond to Qualified Written Requests (QWRs)**: Plaintiff submitted

17 | multiple inquiries and notices, including a Qualified Written Request (QWR), seeking

18 | information about the mortgage, including the details of its securitization. The Defendant

19 | failed to respond to these QWRs within the statutory time frame, as required under 12 U.S.C.

20 | § 2605(e). Failure to respond to a QWR is a clear violation of RESPA, as noted in *Catalan v.*

21 | *GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011), where the court held that servicers

22 | must provide a timely response to QWRs or face liability.

23 | 2. **Kickbacks and Referral Fees**: The Plaintiff alleges that the Defendant engaged in

24 | improper kickbacks and referral fees during the origination of the mortgage, in violation of

25 | 12 U.S.C. § 2607. These practices inflated the cost of the mortgage to the Plaintiff and were

26 | not properly disclosed, as required by law. In *Edwards v. First American Corp.*, 798 F.3d

27 | 1172 (9th Cir. 2015), the court recognized that violations of this section of RESPA could

28 | result in treble damages and other penalties.

1  Plaintiff seeks statutory damages, actual damages, and attorney's fees as provided under RESPA for

2  these violations.

**COUNT 12. <u>BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR</u>**

**<u>DEALING</u>**

5      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

6  set forth herein. Every contract, including mortgage agreements, contains an implied covenant of

7  good faith and fair dealing, which requires the parties to act in a manner that honors the spirit of the

8  agreement and not to engage in conduct that would destroy or injure the right of the other party to

9  receive the benefits of the contract.

10  The Defendant breached this implied covenant by:

11      **1.** Engaging in Unfair and Deceptive Practices: The Defendant's actions, including the

12          unauthorized alterations to the mortgage note, the failure to disclose critical information, and

13          the mishandling of the loan's securitization, have deprived the Plaintiff of the benefits of the

14          mortgage agreement. The Fourth Circuit in *Carolina Conduit Systems, Inc. v. MasTec N.*

15          *Am.*, Inc., 358 F. Supp. 2d 676 (D.S.C. 2005), held that a breach of the implied covenant of

16          good faith and fair dealing occurs when a party engages in conduct that frustrates the other

17          party's enjoyment of the contract's benefits.

18      **2.** Failure to Cooperate with Plaintiff's Efforts to Cure Default: The Defendant's refusal to

19          respond to Plaintiff's notices and attempts to cure any alleged default further demonstrates a

20          lack of good faith. In *Williams v. JPMorgan Chase Bank, N.A.*, 2015 WL 5081356 (D. Md.

21          2015), the court found that a servicer's failure to cooperate with a borrower's efforts to

22          resolve issues related to their loan can constitute a breach of the implied covenant.

23  Plaintiff seeks compensatory damages, punitive damages, and any other relief deemed appropriate

24  by the Court.

**COUNT 13. <u>CONSTRUCTIVE FRAUD</u>**

26      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

27  set forth herein. Constructive fraud occurs when one party, through breach of a legal or equitable

28  duty, gains an advantage over another by misleading or deceiving them, even without intent to

- 18 -

deceive. Unlike actual fraud, which requires proof of intent, constructive fraud focuses on the breach of duty and the resulting unfair advantage.

The Defendant committed constructive fraud by:

**1. Breach of Fiduciary Duty**: The Defendant, by virtue of its superior knowledge and control over the mortgage terms, owed a duty to the Plaintiff to act in his best interests. The Defendant's failure to disclose material facts about the securitization and alterations to the mortgage note constitutes a breach of this duty, leading to an unfair advantage over the Plaintiff. The South Carolina Supreme Court in *Ardis v. Cox*, 314 S.C. 512, 431 S.E.2d 267 (1993), recognized that a breach of fiduciary duty in the context of a mortgage transaction could constitute constructive fraud.

**2. Misrepresentation of Loan Terms**: The Defendant misrepresented and concealed the true terms of the loan, including the payment schedule, which misled the Plaintiff into accepting a mortgage that was not in his best interests. The court in *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct. App. 2003), affirmed that a party's reliance on misrepresented facts that lead to a disadvantage can be grounds for constructive fraud.

Plaintiff seeks rescission of the mortgage contract, restitution of payments made, compensatory damages, and punitive damages.

## IX. <u>CONCLUSION</u>

In sum, the Plaintiff, Christopher Rogers, has presented a well-founded complaint grounded in both statutory and common law principles. Defendant SAFE Federal Credit Union engaged in a series of unlawful and deceptive practices that not only violated federal and state statutes but also defrauded the Plaintiff, causing substantial financial harm and emotional distress. The Defendant's actions, including the failure to provide mandatory disclosures, the fraudulent concealment of critical loan information, the improper securitization and transfer of the mortgage note, and the disregard for Plaintiff's lawful notices, constitute severe breaches of trust and legal obligations.

The Plaintiff respectfully submits this complaint, confident that the Court will recognize the merits of the claims presented and provide the necessary relief to rectify the injustices suffered.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Christopher Rogers respectfully requests that this Court enter judgment in his favor and grant the following relief:

1. Declaratory Relief:

- Declare that the Defendant SAFE Federal Credit Union has no legal standing to enforce the mortgage note due to the improper endorsement, unauthorized alterations, and failure to properly securitize and transfer the note in accordance with the Uniform Commercial Code and other applicable laws.

2. Rescission of the Mortgage Contract:

- Order the rescission of the mortgage contract and return to the Plaintiff all payments made under the mortgage agreement, including principal, interest, fees, and any other charges.

3. Compensatory Damages:

- Award compensatory damages to the Plaintiff for the financial losses incurred as a result of the Defendant's unlawful actions, including but not limited to the unauthorized alterations, fraudulent concealment, and violations of federal and state laws.

4. Punitive Damages:

- Award punitive damages to the Plaintiff in an amount sufficient to punish the Defendant for their willful, malicious, and fraudulent conduct and to deter similar future conduct.

5. Statutory Damages:

- Award statutory damages under the applicable federal and state laws, including but not limited to damages for violations of the Real Estate Settlement Procedures Act (RESPA), the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Fair Debt Collection Practices Act (FDCPA), and other relevant statutes.

6. Restitution and Disgorgement:

- Order the Defendant to disgorge all profits obtained through their unlawful conduct and award restitution to the Plaintiff, including 20% of the tranche value associated with Plaintiff's loan within the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2022-28, as referenced in the documents provided.

7. Injunctive Relief:

- Grant an injunction preventing the Defendant from further attempting to enforce the mortgage note or foreclose on the Plaintiff's property, and requiring the Defendant to correct any negative credit reporting associated with the mortgage.

8. Quiet Title:

- Quiet title to the property located at 20 Doe Court, Wedgefield, South Carolina, in favor of the Plaintiff, free and clear of any liens or encumbrances claimed by the Defendant.

9. Pre- and Post-Judgment Interest:

- Award pre-judgment and post-judgment interest on all amounts awarded, at the maximum rate allowed by law, from the date of the Defendant's wrongful conduct until the date of payment.

10. Other Relief:

- Grant such other and further relief as the Court deems just, equitable, and appropriate under the circumstances.'

Respectfully submitted this 9th day of September, 2024.

By: _____

Christopher Rogers, pro se
20 Doe Court
Wedgefield, South Carolina 29168
Ph: (803) 883-8196
ascdmtl2023@gmail.com

ORIGINAL COMPLAINT